IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROGER DOWDY,           )
                       )
    Plaintiff,         )
                       )    NO. 1:05-0090
v.                     )    JUDGE HAYNES
                       )
SOLUTIA HEALTHCARE TAS,)
INC. and GLENN COX     )
    Defendants.        )

## MEMORANDUM

Plaintiff, Roger Dowdy, filed this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq., against Defendants Solutia Healthcare TAS, Inc. ("Solutia"), a Tennessee corporation engaged in the business of consumer debt collection and Glenn Cox, an attorney. Plaintiff asserts claims of false and misleading representations in the collection of his debt and use of unfair or unconscionable means to collect that debt, as well as harassment and abuse by the Defendants in the collection of that debts.[1] In essence, Plaintiff alleges that Defendant Solutia attempted to collect twice the amount of the debt Plaintiff actually owed, with knowledge that the amount had been doubled. Plaintiff asserts that Defendants repeatedly called Plaintiff to harass and annoy him. The parties proceeded with discovery.

Before the Court is Plaintiff's motion for partial summary judgment as to Defendant Solutia, (Docket Entry No. 8), contending, in sum: (1) that whether Solutia violated the FDCPA should be evaluated from the standpoint of the least sophisticated consumer; (2) that the FDCPA is a strict liability statute, and proof of one violation is sufficient to support summary judgment

---

[1] Plaintiff's complaint alleges that Defendant repeatedly called Plaintiff to harass and annoy in connection with the collection of a debt. Plaintiff's motion for partial summary judgment does not address this issue. Thus, the Court will not discuss this claim further.

for Plaintiff; (3) that Plaintiff's proof establishes several violations of the FDCPA in mailings to collect an amount twice the amount of Plaintiff's debt; and (4) that there are not any material fact disputes on those mailings. (Docket Entry No. 10, Plaintiff's Brief in Support of Partial Summary Judgment).

In response (Docket Entry No. 12), Solutia contends that summary judgment is inappropriate because Plaintiff's claims are barred by the one year statute of limitations under the FDCPA and the bona fide error defense under 15 U.S.C. § 1692k(c) bars Plaintiff's recovery.

For the reasons set forth below, the Court concludes that Plaintiff has established several violations of the FDCPA by the Defendant Solutia. The Court also concludes Plaintiff's claims are timely under the FDCPA and that Solutia's bona fide error defense does not bar Plaintiff's claims.

## A. FINDINGS OF FACT[2]

In September, 2003, Dowdy required the dental services of Dr. Garry W. Love, D.D.S.. (Docket Entry No. 14, Defendant Solutia's Response to Plaintiff's Statement of Undisputed Facts at ¶ 1). Immediately prior to undertaking the dental work, Dowdy signed an "Insurance Authorization and Assignment." Id. The "Insurance Authorization and Assignment" reads as

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986), app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). There are not any material factual disputes and this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

2

follows:

> I hereby authorize Garry W. Love, D.D.S. to furnish information to insurance carriers or any other agencies concerning my illness and treatment that are necessary to process my claim. I hereby assign to Garry W. Love, D.D.S. all payments for dental services rendered to myself or my dependents. I understand that I am responsible for any amount not covered by insurance, and further, that if this account is placed in the hands of an attorney or other agency or individual for collection, I will be responsible for any and all collection costs, including but not limited to attorney's fees and court costs.
>
> **I understand that accounts over 90 days may be charged a service charge of 1.5 % per month (18% APR) on the unpaid balance.**

(Docket Entry No. 10, Plaintiff's Brief, Exhibit A thereto). Dr. Love rendered dental services to Dowdy that included the application of eleven (11) crowns. <u>Id.</u> at Exhibit E thereto.

Upon Dr. Love's completion of the dental work, Dowdy's insurance company paid a portion of Dr. Love's bill. (Docket Entry No. 14 at ¶ 2). As of November 10, 2003, Dowdy's remaining unpaid balance was $5,233.02 before late charges accrued. <u>Id.</u> Dr. Love's office sent Dowdy a letter dated March 2, 2004, stating the following:

> Dear Valued Patient:
>
> Our office has been unsuccessful in the collection of this account in the amount of $5390.53. Therefore, we regret to inform you that if this account is not paid in full by 4-2-04 we will be forced to turn this account over for collection. If this account is placed in collection, you will be responsible for all collection costs, which would bring your account balance to $10,781.06. This is your final notice.
>
> If payment has been made, please accept our apology for this notice. Thank you in advance for your cooperation.
>
> Sincerely,
>
> /s/ Betsy
>
> Betsy Love
> Office Manager

3

cc: file copy for collection agency

(Docket Entry No. 10, Exhibit B-SJ thereto).

Dowdy did not make any payments by April 2, 2004 and as a consequence, Dr. Love's office changed the balance on Dowdy's account to $10,781.06. (Docket Entry No. 14 at ¶ 4). On April 9, 2004, Dr. Love placed the account with Solutia for collection. Id. On April 10, 2004, Solutia sent Dowdy a letter stating that his account balance was $10,781.06. (Docket Entry No. 12-2, Affidavit of Laura Boyd, at ¶ 4).

Dr. Love had been doing business with Solutia and its predecessor, Tennessee Adjustment Service, for over ten years. Id. at ¶ 2. As a result of this long business relationship, Solutia and Dr. Love did not have a written contract regarding collection fees and costs. (Docket Entry No. 14 at ¶ 12). Their longstanding arrangement, however, entitled Solutia to 50% of the amount actually collected. Id.

According to Laura Boyd, Solutia's office manager, a contingency fee agreement for debt collection is not uncommon. (Docket Entry No. 12-2 at ¶ 11). In addition, Boyd states that a 50% collection fee is used where the account requires litigation for collection or when the account is older. Id. Boyd describes Solutia's debt collection practices as follows:

> All clients are expected to submit only valid indebtedness to Solutia. All clients are instructed to not forward invalid accounts to Solutia for input into its system. In instances where there are added amounts for interest or other costs of collection, the client is required to provide some writing signed by the debtor authorizing the addition of interest or collection costs. This was done in the case with Dr. Love's account that was owed by Mr. Dowdy...Solutia...had a copy of the agreement that Mr. Dowdy had signed that obligated him to pay interest and attorney fees.

Id. at ¶ 5.

Solutia representatives knew that Dr. Love's office typically computes and submits

4

account balances reflecting twice the amount Dr. Love believed he was owed. (Docket Entry No. 14 at ¶ 6). As a practice, Solutia relies on Dr. Love's statement of the account to avoid a potential adversarial situation between Solutia and its client in the event a debtor questions the amount (Docket Entry No. 12-2 at ¶ 8). According to Boyd, reliance on a client's statement of account is common in the business of debt collection. Id.

Solutia, however, was aware that Dr. Love's office had doubled the balance on Dowdy's account, and had a copy of the March 2, 2003 letter mailed to Dowdy from Dr. Love's office. (Docket Entry No. 14 at ¶ 5). Boyd described Dr. Love's billing practices as follows:

> A: Well, usually his bills are doubled when they come to our office.
>
> Q: "Usually" meaning sometimes not?
>
> A: No, they always are.
>
> Q: Who doubles them?
>
> A: Their office does.
>
> * * *
>
> Q: And what does that doubling- Why is it done and what does it represent?
>
> A: So he doesn't lose any money. I mean if he- He doesn't lose any money if he doubles it. I mean he's not out any money for collection or anything.

(Docket Entry No. 10, Exhibit C-SJ thereto, Deposition of Laura Boyd at p. 64).

On February 8, 2005, Dowdy called Solutia to question the amount he owed to Dr. Love. (Docket Entry No. 14 at ¶ 6). During that telephone conversation, Dowdy informed Solutia that the amount allegedly due was too high. Id. at ¶ 9. The Solutia representative informed Dowdy that the $10,781.06 amount was correct. Id. at ¶ 10. The representative further stated that Solutia would mail Dowdy a verification of this debt. Id. Solutia sent Dowdy an itemized

5

verification stating $10,781.06 as the amount owed. (Docket Entry No. 10, Exhibit A thereto, Itemization of Account).

On December 20, 2004, a civil summons was filed against Dowdy for failure to pay the debt. (Docket Entry No. 12-3, Civil Summons). Due to the process server's inability to locate Dowdy, an alias summons was filed against him on March 14, 2005. (Docket Entry No. 13, Defendant Solutia's Responses to Plaintiff's Statement of Material Facts at ¶ 5 and Docket Entry No. 12-4, Alias Summons). The Defendant Cox authorized both these documents to be filed and the documents stated the amount owed as $10,781.06. (Docket Entry Nos. 12-3, Civil Summons and 12-4, Alias Summons).

On June 3, 2005, Solutia was awarded a judgment for $10,781.06 in the General Sessions Court. (Docket Entry No. 14 at ¶ 14). Dowdy appealed the judgment to the Circuit Court and received a de novo hearing. Id. On October 4, 2005, The Honorable Robert L. Holloway Jr., Circuit Judge for Maury County, Tennessee, entered a final judgment in favor of Love in the amount of $8,400.94. (Docket Entry No. 10, Exhibit E-SJ thereto, Order at ¶3). This judgment was for $5,186.00 plus $1,503.56 in interest (pre-filing $169.14 and post-filing $1,334.42) and "one third of the principal," which the court calculated to be $1,711.38. Id. Dowdy did not appeal. This action was filed on December 7, 2005. (Docket Entry No. 1).

## B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are

6

widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873

Case 1:05-cv-00090 Document 15 Filed 12/08/06 Page 7 of 17 PageID #: 131

F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could

8

not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and

10

other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## FDCPA CLAIMS

The purposes of the Fair Debt Collection Practices Act ("FDCPA") are to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors refrain from using abusive debt collection practices, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e). The FDCPA prohibits: false representations about the character, amount or legal status of a debt; use of false representations or deceptive means to collect or attempt to collect any debt; and the collection of amounts not authorized by the agreement creating the debt. 15 U.S.C. §§ 1692, 1692e(2)(A), 1692e(10), and 1692f(1). The FDCPA is a strict liability statute. Edwards v. McCormick, 136 F.Supp.2d 795, 800 (S.D. Ohio 2001) citing Frey v. Gangwish II, 970 F.2d 1516, 1518-19 (6th Cir. 1992). Therefore, if Plaintiff's proof establishes a violation of the FDCPA, summary judgment is appropriate.

Plaintiff's FDCPA claims are: (1) that Solutia used the United States mail to make false and misleading representations of the amount of Dowdy's debt; (2) that the mailings constituted

12

false and deceptive means to collect a debt; and (3) that Solutia knew or should have known that the amount it attempted to collect was too high, but nonetheless attempted to collect that amount.

The Sixth Circuit has held that the determination of whether a violation of FDCPA should be analyzed from the standpoint of the least sophisticated consumer. See Smith v. Transworld Systems, Inc., 953 F.2d 1025 (6th Cir. 1992). The purpose for using the "least sophisticated consumer" standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). For each allegation of Solutia's wrongdoing, the Court must determine whether the least sophisticated consumer would be deceived. Smith, 953 F.2d at 1028.

Plaintiff's claims involve Solutia's mail to Dowdy in February, 2005. On February 8, 2005, Dowdy telephoned Solutia to dispute the amount he allegedly owed, informing Solutia that $10,781.06 was too high. (Docket Entry No. 10, Exhibit D-SJ thereto, Defendant Solutia's Answers to Plaintiff's Requests for Admission, at ¶¶ 2-3). In response to Dowdy's inquiry, the Solutia representative told Dowdy that he did owe $10,781.06 and sent Dowdy an itemized bill as verification of the debt on that same date. Id. According to the itemized bill, Dowdy owed Love $10,781.06, which was listed as both the principal balance and the amount referred[3]. (Docket Entry No. 10, Exhibit A thereto, Itemization of Account). Plaintiff's position is that Solutia misrepresented the amount of his debt in the February 8, 2005 itemization when the principal balance was increased to include collection costs.

The Seventh Circuit addressed similar issues in Fields v. Wilbur Law Firm, P.C., 383

---

[3] The itemized bill included $127.50 for court costs, making the "account balance" $10,908.56. The "principal balance" is listed as $10,781.06.

13

F.3d 562 (7th Cir. 2004), where a debt collector attempted to collect on an account based upon a written contract where the amount of debt was undisputed as well as the amount of interest. The only amount in dispute was attorneys' fees for collection services and that amount was disputed as unreasonable. The first debt collection letter never stated attorneys' fees would be sought even though the account balance more than doubled the original obligation. The Seventh Circuit Court stated:

> Even if attorneys' fees are authorized by contract, as in this case, and even if the fees are reasonable, debt collectors must still clearly and fairly communicate information about the amount of debt to debtors. This includes how the total amount due was determined if the demand for payment includes add-on expenses like attorneys' fees or collection costs.
>
> * * *
>
> An unsophisticated consumer could reasonably wonder why her bill was now $388.54 [original obligation was $122.06], even assuming she had saved the original contract that specified she could be charged for attorney's fees...[o]r an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely. In this circumstance, the debtor (or the debtor's spouse, or someone else paying bills for the debtor) might logically assume that she simply incurred nearly $400 in charges. By leaving the door open for this assumption to be made, Wilbur's letter was misleading because it gave a false impression of the character of the debt. It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt. <u>One simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt.</u>

Id. at 565-66 (emphasis added).

Here, although Solutia's itemized bill provided line items to separate assorted costs from the account balance (such as "accumulated interest," "other charges," "other", etc.), Solutia's letter failed to separate any additional costs from the principal balance. Id. In other words, the itemization did not identify the sources for the $10,781.06 total despite the form letter's spaces

14

to illustrate how a particular balance was calculated. Applying Fields, the Court concludes that Solutia's failures to reflect clearly the addition of collection costs to the principal balance violates 15 U.S.C. §§ 1692e and 1692f.

Solutia contends that Dowdy's claims are time barred under the FDCPA's one year statute of limitations, 15 U.S.C. § 1692k(d), because Dowdy knew that Solutia sought to collect $10,781.06 as early as April 2004. Thus, the statute of limitations required the action to be filed by April, 2005. This action was filed on December 7, 2005.

Relying on Sierra v. Garbus, 48 F.Supp. 2d 393 (S.D.N.Y. 1999), Solutia contends that Plaintiff cannot employ a "continuing violation" theory to avoid the statute of limitations, because that would allow each new communication to state a separate claim. Yet, Sierra noted that had the "defendants sent a series of threatening letters, each of which violate the FDCPA..." not all would be time barred. Id. at 395. In addition, multiple alleged violations of the FDCPA can be treated separately for statute of limitations purposes. Lyons v. Mazda American Credit Co., No. 04-1274, 2005 WL 2174476 at *2 (W.D. Tenn. Sept. 6, 2005) (finding that the statute of limitations on an FDCPA claim for harassing phone calls should be measured one year from the last phone call).

The Court concludes that Solutia's February 8, 2005 letter violates the FDCPA and Plaintiff's claims are not time-barred under the FDCPA.

Defendant next asserts the bona fide error defense under the FDCPA to bar Plaintiff's claims. Under 15 U.S.C. § 1692k(c), a debt collector may not be held civilly liable if the debt collector shows by a preponderance of evidence that: (1) the FDCPA violation was unintentional; (2) the violation resulted from a bona fide error; and (3) the error occurred

15

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. See Smith v. Transworld Sytems, Inc., 953 F.2d 1025 (6th Cir. 1992).

Solutia asserts that its collection of debts is based upon clients' assurances that the debts are valid and Boyd received Dowdy's signed Insurance Authorization and Assignment, stating that he would be responsible for collection costs. (Docket Entry No. 12-2 at ¶ 5). Solutia cites a signed statement from Betsy Love, Dr. Love's office manager, that Dr. Love was owed the amount submitted. Id. Solutia also contends that its collection efforts are based upon a writing signed by the debtor or the applicable state law or statute entitling its client to collect these costs. Id. at ¶ 6. Thus, Solutia relies on their clients' calculations of debt to be accurate and Boyd advised Solutia about the amount of the debt and that Solutia is entitled to rely on that information. Id. at ¶¶ 6 and 10.

The Sixth Circuit holds that for the bona fide error defense, the defendant must show that the violation was unintentional, not the underlying act. Lewis v. ACB Services, Inc., 135 F.3d 389, 402 (6th Cir. 1998). In addition, the bona fide error defense applies only to clerical errors. Edwards, 136 F.Supp.2d at 800 (citing Smith, 953 F.2d at 1034). The error Solutia relies upon is not clerical in nature. Solutia's error resulted from its reliance on Dr. Love's statement of debt that Solutia knew Dr. Love had doubled. Notwithstanding its awareness, Solutia attempted to collect twice the amount of the actual debt. Thus, Solutia's error is not clerical, and the bona fide error defense is unavailable.

For the above-stated reasons, the Court concludes that Plaintiff's motion for partial summary judgment (Docket Entry No. 8) on his claims for the Defendant Solutia's violations of the Fair Debt Collection Practices Act should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the \_\_\_7th\_\_\_ day of December, 2006.

<em>[signature]</em><br>
WILLIAM J. HAYNES, JR.<br>
United States District Judge